UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SODEXO MANAGEMENT, INC.,

              Plaintiff,                             Civil Action No. 15-CV-10610

vs.                                           HON. MARK A. GOLDSMITH

DETROIT PUBLIC SCHOOLS, et al.,

              Defendants.

_____/

## OPINION AND ORDER CONFIRMING THE ARBITRATION AWARD AND DENYING DEFENDANTS' MOTION TO VACATE (Dkt. 36)

This matter is before the Court following arbitration of a long-standing dispute between Plaintiff Sodexo Management, Inc. ("Sodexo") and Defendants Detroit Public Schools, Detroit Public Schools Board of Education, and Jack Martin in his capacity as Emergency Manager for the School District of the City of Detroit (collectively, "DPS"), regarding both Sodexo and DPS's performance under an operations management contract. The arbitration yielded an award in excess of $24 million in favor of Sodexo. Sodexo filed a petition to confirm the award (Dkt. 29); DPS filed a motion to vacate (Dkt. 36). For the reasons discussed below, the Court now confirms the arbitration award and denies DPS's motion to vacate.

## I. BACKGROUND

In 2011, Sodexo and DPS entered into a contract under which Sodexo was to provide facilities management services to various schools in the DPS system. Pl. Br. in Supp. of Pet. at 5-6 (Dkt. 29-1); Defs. Br. in Supp. of Mot. at 2 (Dkt. 36). Under the contract, DPS was to pay Sodexo a set rate per square foot of property serviced. Pl. Br. in Supp. of Pet. at 6. Sodexo submitted two types of invoices to DPS: "Cycle" invoices, which "reflect the regular monthly payments DPS agreed to make in exchange for Sodexo's facilities management services," and

"Community Use" invoices, which "concern[ed] extra-contractual events DPS requested Sodexo to service, such as for churches or civic organizations."  Id.

The contract contained a dispute resolution provision, which required the parties, if unable to resolve the dispute informally or through non-binding mediation, to submit the dispute to binding arbitration upon notice by one of the parties.  See Contract, Ex. A-2 to Pet. to Confirm, at 15-16 (Dkt. 30-2).[1]  The contract also stated that it was to be governed by Michigan law.  Id. at 18.

Sodexo and DPS's relationship quickly became rocky.  By late 2011, Sodexo alleges, DPS had already fallen behind on its contractual payments.  Pl. Br. in Supp. of Pet. at 6.  Conversely, DPS claims that Sodexo's performance "was substandard from the outset" and failed to improve.  Defs. Br. in Supp. of Mot. at 2-3.

A little over two years after the initial contract, on July 18, 2013, the parties entered into a Payment Agreement to address DPS's outstanding balance to Sodexo.  Pl. Br. in Supp. of Pet. at 6; see also Payment Agreement, Ex. B to Pet. to Confirm (Dkt. 34).  That agreement required DPS to pay Sodexo certain outstanding and undisputed receivables, as set forth in an exhibit

_____

[1] The arbitration provision, in full, reads as follows:

> If, after such alternative dispute resolution, the parties still are unable to resolve the disputes, issues, claims, questions, or disagreement arising from or relating to this Contract or the breach thereof, then upon notice by either party to the other, all disputes, issues[,] claims, questions, or disagreement arising from or relating to this Contract or the breach thereof shall be finally settled by submission to the American Arbitration Association in accordance with the provisions of it[s] Arbitration Rules, and judgment on the award rendered by the arbitrator(s) shall be binding and may be entered in any court having jurisdiction thereof.  In the event one of the parties prevails in total in the arbitration, the prevailing party shall recover all its reasonable and necessary attorney fees, costs and expenses incurred in the arbitration proceedings.

Contract at 16.

attached to and incorporated by the agreement; it also established a dispute period for any future invoices issued by Sodexo going forward.  Pl. Br. in Supp. of Pet. at 6-7; Payment Agreement at 2 (cm/ecf page).  For Cycle invoices, the parties agreed to a "payment dispute period of 45 days after invoice date," during which "DPS can challenge the amounts set forth."  Payment Agreement at 2 (cm/ecf page).  Joint resolution of any dispute was to be made within 30 days, and if no agreement was reached the dispute resolution provisions set forth in the original contract controlled.  Id.  DPS "relinquish[ed] disputing rights with respect to disputed invoice charges only after the 45 day period and agree[d] to pay the invoice in accordance with the terms of resolution."  Id.  Regarding Community Use invoices, the parties agreed to a "payment dispute period of 60 days after invoice date," during which DPS could challenge any such invoice.  Id.  Resolution of any dispute was to proceed in the same manner as Cycle invoices, and DPS relinquished its disputing rights to these invoices only after the 60-day period.  Id.[2]

According to Sodexo, DPS timely paid the majority of the balance owed under the Payment Agreement, but "quickly became delinquent once again," and "has not made any substantial payments to Sodexo since October 2013, despite receiving the benefit of . . . services through [ ] June 28, 2014."  Pl. Br. in Supp. of Pet. at 7-8.  DPS asserts that it "fell behind in and withheld monthly payments from Sodexo due both to Sodexo's poor performance and DPS' continuing financial difficulties."  Defs. Br. in Supp. of Mot. at 3.

In May 2014, Sodexo filed a demand for arbitration with the American Arbitration Association ("AAA"), naming the instant Defendants as Respondents, bringing claims for: (i) account stated; (ii) breach of contract; (iii) anticipatory breach of contract and repudiation;

---

[2] With respect to the Community Use invoices, however, DPS did "not relinquish or waive its right to disputes regarding performance and any future payment amounts related to performance issues."  Payment Agreement at 2 (cm/ecf page).

(iv) breach of the implied covenant of good faith and fair dealing; (v) unjust enrichment; and (vi) declaratory judgment.  See Arbitration Demand, Ex. 4 to Defs. Mot., at 10-13 (Dkt. 36-5).

DPS filed an answering statement, and claimed as an affirmative defense that, because Sodexo "failed to fulfill required conditions precedent to the filing of its Demand for Arbitration," the AAA lacked jurisdiction.  Answering Statement, Ex. 5 to Defs. Mot., at 12 (Dkt. 36-6).  Approximately two months later, DPS filed an amended answering statement, adding as additional affirmative defenses: (i) statutory and/or common law immunity; (ii) failure to state a claim under Michigan law; (iii) lack of consideration; (iv) failure to comply with conditions precedent; (v) failure to mitigate damages; and (vi) unclean hands.  Am. Answering Statement, Ex. 6 to Defs. Mot., at 13 (Dkt. 36-7).  DPS also brought counterclaims of breach of contract and unjust enrichment.  Id. at 23-25 of 26 (cm/ecf pages).

Following an unsuccessful mediation, DPS nominated former Genesee County Circuit Court Judge Valdemar Washington, who was subsequently appointed as arbitrator by the AAA, over the objections of Sodexo.  Pl. Br. in Supp. of Pet. at 8-9; Defs. Br. in Supp. of Mot. at 4.

Discovery commenced, and Sodexo filed a motion for partial summary disposition on January 7, 2015.  Pl. Br. in Supp. of Pet. at 9; Defs. Br. in Supp. of Mot. at 5.  That motion was fully briefed, and, on February 9, 2015, Judge Washington granted an interim award of $25,118,452.35 in favor of Sodexo.  Pl. Br. in Supp. of Pet. at 9; Defs. Br. in Supp. of Mot. at 6; 2/9/2015 Interim Award, Ex. E to Pet. to Confirm, at 14 (Dkt. 34-3).  Judge Washington's reasoning underlying the award was that DPS had failed to dispute and pay the invoices at issue within the allotted time period; therefore, DPS had waived its right to dispute those invoices, and payment was owed and past due.[3]  Relying on Michigan's account stated law and procedure

---

[3] Specifically, Judge Washington found that the unpaid Community Use invoices predating the Payment Agreement were governed by the original contract, which in turn required payment on

under Michigan Compiled Laws § 600.2145, Judge Washington accepted the amount set forth in Sodexo's affidavit as prima facie evidence of DPS's indebtedness, because DPS had failed to submit an appropriate counter-affidavit disputing Sodexo's claim to the amounts allegedly owed. 2/9/2015 Interim Award at 11-12, 14.  The interim award was based only on Sodexo's "separate and independent claims," and Judge Washington denied Sodexo's motion as to DPS's counterclaim for breach of contract related to performance issues, id. at 6, 14-15; DPS was entitled to arbitrate those claims going forward, and any damages resulting therefrom would be offset against amounts owed under the invoices, id. at 6, 7-8, 14-15.

On February 18, 2015, over a week after Judge Washington's decision, DPS filed a formal objection to his continued participation in the matter with the AAA, claiming a conflict of interest triggered by a change in authority at DPS.  Defs. Br. in Supp. of Mot. at 5-7; Pl. Br. in Supp. of Pet. at 10.  On January 13, 2015, after Sodexo had filed its motion for partial summary disposition but before DPS had filed a response, Defendant Jack Martin was replaced in his capacity as DPS Emergency Manager by Darnell Earley.  Defs. Br. in Supp. of Mot. at 5-6. Immediately prior to being named DPS Emergency Manager, Earley had served as Emergency Manager for the City of Flint.  Id. at 5.  In that capacity, Earley had been sued in both state and federal courts regarding allegedly unlawful increases in Flint's water and sewer rates, first instituted in 2011 by Flint's former mayor and further increased by Earley's predecessor, which

---

or before the 60th day following the invoice.  2/9/2015 Interim Award at 10.  He further found that despite receiving those invoices more than 60 days earlier, DPS had neither invoked the dispute resolution procedures nor submitted payment, constituting a breach of the agreements. Id. at 10, 13.  With respect to invoices postdating the Payment Agreement, Judge Washington similarly found that DPS had failed to challenge any specific invoice within the 45- and 60-day dispute resolution period, id. at 10-11, thereby waiving its right to dispute those invoices, and the subsequent failure to submit payment amounted to a breach, id. at 13.  Judge Washington also found that the Payment Agreement required DPS "to pay all of Sodexo's outstanding and undisputed receivables," as set forth in the exhibit, but DPS had since disputed six of those invoices and failed to make those payments as previously agreed.  Id. at 10.

continued to be collected by the City during Earley's tenure.  Id. at 5-6; Pl. Br. in Supp. of Pet. at 11.  See also Shears, et al. v. Bingaman, et al., No. 14-103476-CZ, Ex 9-B to Defs. Mot. (Dkt. 36-12); Kincaid, et al. v. Bingaman, et al., No. 14-cv-11780 (E.D. Mich.), Ex. 9-C to Defs. Mot (Dkt. 36-13).  Judge Washington was lead counsel for the plaintiffs in both of those lawsuits. Defs. Br. in Supp. of Mot. at 5-6; Pl. Br. in Supp. of Pet. at 11.

Within a week of learning about Earley's appointment by way of DPS's February 18 objection, Judge Washington disclosed the state circuit court lawsuit to the parties and the AAA, stating that prior to February 19, 2015 he was unaware of Earley's appointment or involvement in the arbitration.  Am. Notice of Appointment, Ex. H to Pet. to Confirm, at 2, 4, 5 (cm/ecf pages) (Dkt. 34-6); Pl. Br. in Supp. of Pet. at 11.[4]  DPS did not move to replace Martin with Earley as a named party in the arbitration.  See Am. Notice of Appointment at 2, 4 (cm/ecf pages).  Jack Martin, in his official capacity as Emergency Manager, remains the named-individual Defendant in this action.  Over DPS's objection, the AAA reaffirmed Judge Washington's appointment as arbitrator.  See 3/11/2015 Email, Ex. I to Pet. to Confirm (Dkt. 34-7).

The arbitration continued, and Sodexo prevailed on a second motion for summary disposition, which dismissed most of DPS's remaining counterclaims.  Pl. Br. in Supp. of Pet. at 12; Defs. Br. in Supp. of Mot. at 7; 6/19/2015 Decision, Ex. J to Pet. to Confirm (Dkt. 34-8). Judge Washington then convened a hearing on the remaining issues, which included Sodexo's claim for lost profits and start-up costs, as well as DPS's claims for property damage and breach of contract damages.  See 8/27/2015 Final Award, Ex. K to Pet. to Confirm, at 5 (Dkt. 34-9).

---

[4] While the amended notice of appointment is undated, the record indicates that the disclosure was made sometime between February 19, the date Judge Washington learned of Earley's appointment, and February 25, the date DPS submitted a supplemental objection to Judge Washington's appointment in which it references the disclosure.  See Suppl. Obj., Ex. 11 to Defs. Mot. (Dkt. 36-22).

After accounting for DPS property damage valued at almost one million dollars, Judge Washington issued a net final award to Sodexo in the amount of $24,169,237.91.  Id. at 22. Sodexo's petition to confirm and DPS's motion to vacate followed.

## II. ANALYSIS

There is a presumption under the Federal Arbitration Act ("FAA") that arbitration awards be confirmed.  Nationwide Mut. Ins. Co. v. Home Ins. Co., 429 F.3d 640, 643 (6th Cir. 2005). Judicial review of an arbitrator's decision is "very narrow; one of the narrowest standards of judicial review in all of American jurisprudence."  Id. (quoting Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 625 (6th Cir. 2002)).  Vacating an arbitration award is appropriate only in very limited circumstances.  Id.  Those circumstances include:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Here, DPS argues that the award must be vacated because: (i) Judge Washington engaged in misconduct when he failed to disclose that he had been counsel in a lawsuit against Earley; (ii) Judge Washington exceeded his authority when he exercised jurisdiction over Martin, a non-party to the contract; (iii) Judge Washington exceeded his authority when he imported Michigan's account stated procedure into the arbitration; and (iv) Judge Washington exhibited

7

"evident partiality" against DPS, thus denying DPS a fair hearing.  DPS also belatedly added § 10(a)(3) as a basis for vacatur, contending that Judge Washington refused to hear relevant and material evidence.  The Court takes DPS's failure to disclose and evident partiality arguments together, because they involve a similar set of issues, and then addresses the remaining arguments in turn.  Ultimately, the Court does not find any of these arguments persuasive and confirms the award.

### A.  Failure to Disclose and Evident Partiality

DPS takes aim at Judge Washington's prior litigation against Earley, in Earley's capacity as Emergency Manager for the City of Flint, on two grounds.  First, DPS argues that Judge Washington's failure to disclose the purported conflict was misconduct under the FAA, because the undisclosed relationship would create an impression of impermissible bias.  Defs. Br. in Supp. of Mot. at 9-10.  Second, DPS argues that Judge Washington's role as lead counsel in litigation that named Earley as a defendant amounted to "evident partiality" against Earley and/or DPS in the subsequent arbitration, such that DPS was denied a neutral and unbiased determination of its rights.  Id. at 21-22.

DPS asserts that potential arbitrators are required to disclose any actual, potential, or perceived conflicts of interest, and the failure to do so justifies the setting aside of an award.  Id. at 9.  DPS faults Judge Washington for failing to disclose his prior litigation against Earley between January 13, 2015 — when Earley replaced Martin as DPS Emergency Manager — and February 9, 2015 — when Judge Washington issued his interim decision and award in favor of Sodexo.  Id.

However, Judge Washington's amended disclosures state that he was not aware of the circumstances giving rise to the potential conflict until February 19, 2015, after DPS's counsel

called it to the AAA's attention.  Following Earley's replacement of Martin, Earley was never substituted for Martin into the proceeding; nor is there evidence that DPS ever informed Judge Washington of Earley's new position with DPS until after issuance of the February 9, 2015 decision.  DPS notes that under the Federal Rules of Civil Procedure, a public officer's successor is automatically substituted as a party, id. at 21 n.5, but, as Sodexo points out, the Rules do not apply in arbitration proceedings, Pl. Resp. at 11 (Dkt. 38).  Even if Earley were automatically substituted in for Martin by operation of law, the Court is unclear as to how Judge Washington would be aware of the substitution, so as to disclose any potential conflict if he were not alerted to the substitution by the parties.

While DPS claims that the purported conflict was one Judge Washington "clearly knew existed," Defs. Br. in Supp. of Mot. at 22, it provides no support for this speculative assertion, aside from the fact that Earley's appointment as DPS Emergency Manager was "covered widely in both the print and electronic media, id. at 5.  See also Defs. Reply at 4 (Dkt. 39).  But to impute knowledge to Judge Washington based on press reports would be pure speculation.  Accordingly, the alleged failure to disclose is not misconduct warranting vacatur of the arbitration award, nor does it evince evident partiality such that the award must be vacated.  See Overseas Private Inv. Corp. v. Anaconda Co., 418 F. Supp. 107, 112 (D.D.C. 1976) ("When the existence of a potentially prejudicial relationship is not known to an arbitrator, there is no possible way in which the relationship can affect his decision.  Thus, disclosure would serve no purpose.").

DPS further faults Judge Washington for not recusing himself after the information came to light.  Defs. Br. in Supp. of Mot. at 11, 21-22.  However, Judge Washington's continued participation in the case did not amount to the "evident partiality" necessary to vacate the

arbitration award.   "Evident partiality" exists "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1358 (6th Cir. 1989) (quoting Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Fund, 748 F.2d 79, 84 (2d Cir. 1984)).   While less exacting than "proof of actual bias," it is more than the mere "appearance of bias." Id.   Arbitrators are not held to the same standard as Article III judges. Id. at 1360.   Rather, "[t]he alleged partiality must be direct, definite, and capable of demonstration, and 'the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator.'" The Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 329 (6th Cir. 1998) (quoting Consol. Coal Co. v. Local 1643, United Mine Workers of Am., 48 F.3d 125, 129 (4th Cir. 1995)).

DPS contends that "[a]ny reasonable person . . . would recognize the absence of impartiality when the arbitrator is (or has been) involved in a separate adversarial proceeding against one of the parties to the arbitration." Defs. Br. in Supp. of Mot. at 10; see also id. at 21 ("For all of the time that Washington sat as a supposedly neutral arbitrator in the DPS/Sodexo contractual dispute, he either was simultaneously or recently had been serving as lead counsel in separate, adversarial proceedings against Earley, who is the current top person at the main and target defendant, DPS.").   The Court disagrees.

Representing a litigant in a separate and distinct lawsuit against an arbitrating party does not per se meet the standard for "evident partiality." See Halliburton Energy Servs., Inc. v. NL Indus., 553 F. Supp. 2d 733, 788 (S.D. Tex. 2008) (holding that a "failure to disclose a prior involvement as counsel in litigation against one of the arbitrating parties" "would not meet the standard of evident partiality").   And it does not do so on the facts here, given the nature of the litigation and the limited role Earley played.

Earley was a named party in Judge Washington's cases only because of his position as Flint's Emergency Manager, and the lawsuits did not seek personal liability against Earley.[5] There is no indication that Earley was an active or key participant in those lawsuits. According to Judge Washington's amended disclosures, he "had no direct contact with Mr. Earley" during the litigation. Am. Notice of Appointment at 5 (cm/ecf page). And the moment Earley ceased being Emergency Manager for Flint, his connection with those cases terminated. Similarly, Earley's involvement — the extent and nature of which is unknown — in the instant arbitration was also only by virtue of his capacity as Emergency Manager for DPS; Earley was not involved in the underlying events at issue in the arbitration, nor did Sodexo seek personal liability against Earley.

These attenuated connections render any claim of partiality without merit. See United States v. Black, 490 F. Supp. 2d 630, 647-648, 659 (E.D.N.C. 2007) (emphasizing the distinction between suits against official-capacity defendants, which seek relief only against the government, versus personal-capacity suits, which seek relief against specifically named persons, in concluding that role as counsel in a prior official-capacity lawsuit against criminal defendant did not require recusal in his criminal case, but electing to recuse regardless "in the public interest"); Matter of Mason, 916 F.2d 384, 387 (7th Cir. 1990) (observing, in a case involving question of recusal of district judge who made prior political donations to litigants appearing before him, "[a]ny doubts about the judge's impartiality are especially weak because the complaint names [the litigants] in their official rather than personal capacities"). Further undermining any claim of partiality is the fact that Earley was never, and is not currently, a

---

[5] DPS asserts that Earley was sued in both his personal and his official capacities, but does not explain the basis for this assertion. See Defs. Br. in Supp. of Mot. at 5; Defs. Reply at 1. Judging by the complaints, the Court does not understand Earley to have been sued in his personal capacity for money damages.

named party to either the arbitration or this lawsuit; he cannot be held personally liable for any adverse decision against DPS.

Moreover, DPS has pointed to no specific facts that indicate Judge Washington was improperly motivated. While DPS summarily asserts that there has been "a history of 'bad blood' between Washington, his clients and Earley that has been openly aired in the public media," and further describes the relationship between the two as "contentious," Defs. Br. in Supp. of Mot. at 21-22, it has provided no evidentiary support for either of those statements. While DPS argues that Judge Washington's grant of partial summary disposition to Sodexo is evidence of partiality, Defs. Reply at 5, "[a]n adverse award in and of itself is no evidence of bias absent some evidence of improper motivation." The Andersons, Inc., 166 F.3d at 330.[6] And notably, in that same decision, Judge Washington actually denied Sodexo's motion as to DPS's counterclaim for breach of contract, citing material questions of fact.

The case on which DPS principally relies to support its argument that Judge Washington should have been categorically excluded from sitting in judgment of the arbitration is distinguishable from the facts here. In Sun Refining & Marketing Co. v. Statheros Shipping Corp. of Monrovia, Liberia, 761 F. Supp. 293, 295-296 (S.D.N.Y. 1991), the court deemed not impartial the appointed neutral arbitrator, in a three-arbitrator panel, who was extensively involved, as both a corporate agent and an important witness, in a separate and contemporaneous arbitration against a party to the arbitration over which he was presiding. Against this background, the court considered it significant that the neutral arbitrator had engaged in objectionable conduct during the course of the arbitration. Id. at 301-303 (failing to inform the

---

[6] DPS further specifies that the manner in which Judge Washington granted Sodexo's motion — prior to the close of discovery — is evidence of bias, Defs. Reply at 5, but, as the Court explains at length infra, there is no indication that Judge Washington improperly entertained or disposed of the motion so as to permit an inference of improper motivation.

arbitrator appointed by the party against whom the neutral arbitrator was adverse in the separate proceeding that the neutral arbitrator and the third arbitrator would increase fees of those two arbitrators only, and would require the adverse party to pay a disproportionate share).

Conversely, Judge Washington's and Earley's association in the separate litigation was far more remote — Earley was merely a nominal, statutorily required party.  And the Court perceives no objectively objectionable behavior by Judge Washington that would suggest the prior association colored his views.  While DPS argues that Judge Washington's award of attorney fees to Sodexo in the wake of granting Sodexo's motion for partial summary disposition is objectionable conduct and evidence of bias, Judge Washington later rescinded the fee award after DPS pointed out the error, as DPS itself acknowledges.  Defs. Br. in Supp. of Mot. at 6 n.3; Defs. Reply at 3.[7]  Given that this issue was actually resolved in DPS's favor, the Court will not construe the original award of fees, even if in error, as evidence of bias against DPS.

In sum, DPS has not demonstrated that a reasonable person would have to conclude that Judge Washington was not impartial.  Indeed, DPS has not shown that there was even an appearance of bias resulting from Judge Washington's representation of the plaintiffs against relevant City of Flint officials.[8]  Therefore, the Court declines to vacate the arbitration award on grounds of alleged partiality.

---

[7] This fact makes the instant case distinguishable from Thomas Kinkade Co. v. White, 711 F.3d 719 (6th Cir. 2013).  See Defs. Reply at 3 n.1.  There, the arbitration panel denied a request for attorney fees, and then, later, the arbitrator alleged to have been partial sua sponte solicited, over one party's objection, an application for attorney costs, and awarded those costs over another arbitrator's dissent.  Thomas Kinkade, 711 F.3d at 723.  Additionally, the attorney fee incident in that case was just one of "a convergence of undisputed facts that, considered together, show a motive for [the arbitrator] to favor [a set of parties] and multiple, concrete actions in which he appeared actually to favor them."  Id. at 724.  That is not the case here.

[8] Similarly, an Article III judge — who is held to the higher "appearance of bias" standard — would not be required to recuse him or herself in these circumstances.  See United States v. Hurst, 951 F.2d 1490, 1503 (6th Cir. 1991) (holding that no reasonable person would find a trial

### B. Acting Beyond the Scope of Authority

An objection based on 9 U.S.C. § 10(a)(4) — that an arbitrator exceeded his or her powers — must meet an exacting test:

> A party seeking relief under [this] provision bears a heavy burden. "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand, regardless of a court's view of its (de)merits. Only if "the arbitrator act[s] outside the scope of his contractually delegated authority"—issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract"—may a court overturn his determination. So the sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013) (internal citations omitted). DPS has not met that test here.

### 1. Jurisdiction over Jack Martin

DPS contends that, because he was not a party to the initial DPS/Sodexo facilities management contract, Martin did not consent to arbitration, and Judge Washington exceeded his authority when he "essentially forced Martin into the arbitration by awarding money damages against Martin." Defs. Br. in Supp. of Mot. at 11. The Court disagrees.

First, the AAA's Commercial Rules of Arbitration expressly provide that "[a] party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection." Commercial Rule of Arbitration 7(c). DPS filed not just an answering statement but also, two months later, a first amended answering statement. In neither of those answering

---

judge not impartial when trial judge had filed a lawsuit against the defendant years prior on behalf of a group of investors alleging fraud).

statements did DPS and/or Martin individually, object to the arbitrator's jurisdiction over Martin. Indeed, in both statements, DPS admitted the fact allegations in Sodexo's demand for arbitration relative to the identity and description of the parties.  <u>Compare</u> Arbitration Demand at 3, ¶ 2 ("For purposes of the instant Demand for Arbitration, DPS includes Emergency Manager for the School District of the city of Detroit, Jack Martin (pursuant to his appointment under M.C.L. 141.1549), and the Board of Education for the School District of the city of Detroit."), <u>with</u> Answering Statement at 3, ¶ 2 ("Respondents admit the allegations contained therein, as said allegations are true.") <u>and</u> Am. Answering Statement at 3, ¶ 2 (same).  Moreover, the first amended answering statement also included counterclaims which were submitted by the "Respondents" in the arbitration, expressly including Martin.  <u>See</u> Am. Answering Statement at 16 of 26 (cm/ecf page).  Thus, in failing to object to arbitration's jurisdiction over Martin and actively participating in that arbitration, DPS and/or Martin have waived any argument regarding jurisdiction that they might have had.

However, contrary to DPS's assertions that Martin never consented to the arbitration, Martin was the signing representative for DPS on the Payment Agreement, which expressly incorporated the dispute resolution procedure established in the initial contract.  <u>See</u> Payment Agreement at 2 (cm/ecf page) ("If agreement cannot be reached, the dispute will be resolved by the process stated in Section I.43 of the Contract.").  Therefore, there was a contractual basis for Judge Washington's exercise of jurisdiction over Martin.

At oral argument before this Court, counsel for DPS raised a new argument, not presented in its motion or its reply brief, that Judge Washington improperly found Martin liable for a breach of a contract to which he was not a party.  However, Judge Washington did not find Martin, himself, liable for anything.  And Martin was named respondent in his official capacity

15

as Emergency Manager for DPS, the statutory substitute for DPS's Board of Education, DPS's traditional governing body.  Accordingly, Martin was, and is, at no risk for any personal liability resulting from this suit.  See Cady v. Arenac Cnty., 574 F.3d 334, 342 (6th Cir. 2009) ("In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." (quoting Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993))).

### 2.  Use of Michigan's Account Stated Claim and Procedure

DPS next asserts that Judge Washington exceeded his authority when he granted Sodexo's motion for partial summary disposition and entered an interim award in favor of Sodexo using Michigan's account stated procedure, as set forth in Michigan Compiled Laws § 600.2145.  Defs. Br. in Supp. of Mot. at 14.  DPS's argument appears to be two-fold: first, that because Michigan's procedure is fundamentally inconsistent with the parties' arbitration agreement and it changed the contracted-for arbitration process, it is preempted by the FAA; and, second, that the use of the procedure effectively "defaulted" DPS, by denying DPS discovery to which they were entitled and preventing DPS from presenting their proofs in a hearing.  The Court addresses each in turn, rejecting both points.

In support of its first point, DPS relies on the Supreme Court case, AT&T Mobility v. Concepcion, 563 U.S. 333 (2011), Defs. Br. in Supp. of Mot. at 15-16; however, that case is inapposite.  As a threshold matter, preemption of state law under the FAA typically operates to displace state law that "attempts to undercut the enforceability of arbitration agreements." Preston v. Ferrer, 552 U.S. 346, 353 (2008) (quoting Southland Corp. v. Keating, 465 U.S. 1, 16 (1984)).  "When state law prohibits outright the arbitration of a particular type of claim . . . [t]he conflicting rule is displaced by the FAA." Concepcion, 563 U.S. at 341.  However, preemption

can also displace generally applicable state law that "is alleged to have been applied in a fashion that disfavors arbitration." Id. Such was the case in Concepcion.

At issue in Concepcion was a California law permitting courts to refuse to enforce contracts that were unconscionable at the time made, which had been interpreted by the California Supreme Court to apply to certain class-action waivers in arbitration agreements. Id. at 340. The plaintiffs in that case argued that the California doctrine was not preempted by the FAA, because it is a ground that "exist[s] at law or in equity for the revocation of any contract," a permissible basis on which to invalidate an arbitration agreement under the FAA, 9 U.S.C. § 2, and California prohibits class-action waivers across all dispute resolution contracts, not just those requiring arbitration. Id. at 341. The Supreme Court disagreed, holding that the doctrine was preempted. It explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings," and to "[require] the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Id. at 344. The California rule preempted in Concepcion would have "allow[ed] any party to a consumer contract to demand [classwide arbitration] ex post," id. at 346, a process that would fundamentally change the nature of the contracted-for arbitration process, and without the parties' consent, id. at 347-351.

Michigan's account stated claim and procedure does not fit into either of the preemption categories. First, it does not bar arbitration of any type. Second, the concerns animating the Supreme Court in Concepcion are lacking here. There is nothing about the account stated claim and/or procedure that would superimpose itself onto every arbitration agreement in the State such that contracting parties could not avoid it, effectively erasing many of the benefits parties

contract for in opting for arbitration in lieu of litigation.  Thus, DPS's "preemption" argument is without merit.

As to DPS's second point, Judge Washington's use of Michigan's account stated procedure was not "grossly unfair," was not "fundamentally inconsistent with the parties' arbitration clause and the FAA," and did not "radically change[ ] the contracted arbitration process under the AAA Commercial Arbitration Rules," as DPS would have the Court believe. Defs. Br. in Supp. of Mot. at 17.

The parties' arbitration clause is threadbare.  It does not offer any guidance as to how any arbitration proceedings should proceed, stating only that the dispute "shall be finally settled by submission to the [AAA] in accordance with the provisions of it[s] Arbitration Rules."  Contract at 16.  However, the contract itself provides that Michigan law governs, id. at 18, so it should have come as no surprise to DPS that the type and nature of the claims Sodexo sought against it would spring from Michigan law.  And the clause broadly refers to "all disputes, issues[,] claims, questions, or disagreement arising from or relating to this Contract or the breach thereof," id. at 16, containing no exclusions for a claim of account stated.  Accordingly, there appears to be a contractual basis for Judge Washington's decision to act on Sodexo's account stated claim.

Indeed, DPS fails to explain how the arbitration clause precludes the application of certain categories of Michigan law and procedure (nor does DPS attempt to explain a meaningful distinction between "law" and "procedure" in this context), while allowing others.  For instance, in its amended answering statement, DPS included as an affirmative defense "failure to state a claim for which relief may be granted under Michigan law."  Am. Answering Statement at 13. And as Judge Washington noted in his decision, the parties agreed that Michigan law governed the terms of their contract, both parties cited Michigan case law in support of their positions, and

18

DPS did not offer any authority that the account stated claim and procedure was not authoritative in arbitration proceedings.  2/9/2015 Interim Decision at 12 n.5.[9]

And while DPS now claims to this Court that it was subject to a default procedure without prior notice, Defs. Br. in Supp. of Mot. at 17, Sodexo's demand for arbitration explicitly included a claim for account stated, and a supporting affidavit, in addition to other claims under Michigan law, see Arbitration Demand at 10-11.  DPS's amended answering statement denied as false many of the allegations relevant to the account stated claim, and neither admitted nor denied others — in essence, admitting only that Sodexo had sent DPS numerous invoices and made numerous demands for payment (while denying that payment was owed and/or due) — but nowhere did DPS assert the inapplicability of Michigan substantive law and procedure with regard to the account stated claim — or any other claim — in either its response to that claim or its affirmative defenses.  Am. Answering Statement at 8-9, 13.[10]  DPS was on sufficient notice of the use of the claim and/or procedure.

The rest of DPS's arguments in its motion to vacate appear targeted toward Judge Washington's use of a summary disposition procedure more generally, rather than the account stated procedure more specifically.  See Defs. Br. in Supp. of Mot. at 17 (arguing that the use of

_____

[9] Rather, DPS now argues that Michigan law "covers and regulates 'arbitration' in several specialized areas" but "did not include the 'account stated' process in any of the statutory provisions on arbitration," and that such an omission was intentional.  Defs. Br. in Supp. of Mot. at 18-19.  Essentially, DPS argues that Michigan law forbids the application of the account stated process in all arbitration proceedings.  However, that cannot be the case, because that would amount to a state law "prohibit[ing] outright the arbitration of a particular type of claim" — that is, a claim for account stated.  See Concepcion, 563 U.S. at 341.  As discussed supra, such a law would likely be preempted under the FAA.

[10] In fact, in failing to object to Sodexo's account stated claim, and the attached affidavit, in its answering statement, DPS waived any objections it may have had on this issue.  See Commercial Rule of Arbitration 41 ("Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.").

the account stated procedure denied DPS discovery under the AAA Rules, terminated mutually agreed-upon discovery processes, and permitted the arbitrator to make binding factual findings without allowing the parties to present their proofs in a hearing).  But the AAA rules expressly allow an arbitrator to use a summary disposition procedure.  See Commercial Rule of Arbitration 33 ("The arbitrator may allow the filing of and make rulings upon a dispositive motion only if the arbitrator determines that the moving party has shown that the motion is likely to succeed and dispose of or narrow the issues in the case.").  And DPS points to no AAA Rule that guarantees a certain timeline or procedure for discovery that Judge Washington, by employing a summary disposition procedure, violated.  Rather, the AAA rules place the evaluation and control of discovery solely within the arbitrator's discretion.  See id. 22(a) ("The arbitrator shall manage any necessary exchange of information among the parties . . ."); id. 22(b) ("The arbitrator may, on application of a party or on the arbitrator's own initiative" require the parties to exchange or make available documents); id. 34 (questions of what evidence is admissible, relevant, material, and what might otherwise be cumulative or irrelevant is committed to the discretion of the arbitrator).

Nothing in the parties' arbitration clause speaks to either a summary disposition mechanism or a right to discovery.  Thus, the account stated procedure and the use of a summary disposition procedure were neither inconsistent with the AAA's rules nor changed the parties' contracted-for process.  Accordingly, DPS has failed to demonstrate that Judge Washington exceeded the scope of his authority under either the parties' arbitration clause or the AAA's rules.

While initially presented to the Court under the rubric of § 10(a)(4) — vacatur on the grounds that the arbitrator exceeded his authority — many of the above arguments implicitly

invoke, and may more properly be packaged under, § 10(a)(3) — vacatur for misconduct in either failing to postpone a hearing, refusing to hear relevant and material evidence, or other behavior that prejudices the rights of the parties — which DPS explicitly invokes in its reply brief, <u>see</u> Defs. Reply at 6, and a ground also argued at the hearing.[11]

Importantly, "'[a]rbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration proceedings is merely whether a party to arbitration has been denied a fundamentally fair hearing.'"  <u>Dobson Indus., Inc. v. Iron Workers Local Union No. 25</u>, 237 F. App'x 39, 48 (6th Cir. 2007) (quoting <u>Nat'l Post Office Mailhandlers v. U.S. Postal Serv.</u>, 751 F.2d 834, 841 (6th Cir. 1985)).  Moreover, "[a]rbitrators are not bound to hear all the evidence tendered by the parties; they need only afford each party the opportunity to present their arguments and evidence."  <u>Terk Techs. Corp. v. Dockery</u>, 86 F. Supp. 2d 706, 709 (E.D. Mich. 2000), <u>aff'd</u>, 3 F. App'x 459 (6th Cir. 2001).

DPS's argument on the § 10(a)(3) ground emphasizes that discovery was necessary for it to even submit a counter-affidavit to Sodexo's affidavit of account stated, and by granting Sodexo's motion for summary disposition before the close of discovery, Judge Washington effectively precluded DPS from complying with the account stated procedure.  <u>See</u> Defs. Br. in Supp. of Mot. at 14, 17; Defs. Reply at 5-6.  Notably, however, DPS did not raise an objection before Judge Washington to the use of the account stated procedure on the basis that DPS did not

---

[11] Because of the round-about way in which § 10(a)(3) was alluded to in this context, there has been no analysis or argument as to the governing law for vacatur on that basis.  This alone waives the argument.  <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").  Moreover, because the issue was not raised in DPS's opening brief, it is not properly raised for the first time in its reply brief.  <u>See</u> <u>Overstreet v. Lexington–Fayette Urban Cnty. Gov't</u>, 305 F.3d 566, 578 (6th Cir. 2002); <u>Peake v. Nat'l City Bank of Mich.</u>, No. 05–72520, 2007 WL 951417, at *3 (E.D. Mich. Mar. 27, 2007) ("An argument raised for the first time in a reply brief is not to be considered by the court.").

have, or was otherwise denied, the information and/or evidence necessary to refute Sodexo's affidavit.  Rather, in its briefing to Judge Washington, it asserted only that "DPS has not filed a counter-affidavit because the obligation to file an affidavit with respect to an Account-Stated claim is created by the Revised Judicature Act, which is not authoritative in an Arbitration proceeding."  Resp. to Mot. Summ. Disp., Ex. 12 to Defs. Mot., at 16 (Dkt. 36-36).

While DPS mentioned in its brief to Judge Washington that discovery was incomplete, it never identified specific information that was purportedly necessary for it to respond to Sodexo's motion or affidavit, nor did it request that Judge Washington deny without prejudice or defer ruling on the motion until DPS could gather the specific information.[12]   DPS's summary assertion in its conclusion that "discovery has essentially just begun," and "Sodexo's motion is clearly premature and should therefore be denied," id., was too generic to alert Judge Washington that entertaining Sodexo's motion at that time would fundamentally prejudice DPS's ability to present its case.

Outside of arbitration, a party cannot defeat a motion for summary judgment by summarily asserting it needs more information.  For instance, Federal Rule of Civil Procedure 56 requires parties to "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  To comply with the substance of Rule 56, a party must do more than "[offer] only general proclamations that more discovery will reveal evidence" regarding a claim or defense.  Reliance Mediaworks (USA) Inc. v. Giarmarco, Mullins & Horton, P.C., 549 F. App'x 458, 464 (6th Cir. 2013) (affirming district

---

[12] See Resp. to Mot. Summ. Disp. at 6 ("Respondents continue in their attempt to locate copies of all of DPS's written challenges to Sodexo's Community Use Invoices, as discovery continues." (emphasis added)); id. at 16 ("At this juncture, discovery continues and as this process proceeds DPS will clarify with specificity its intent to dispute all paid invoices at issue in this case." (emphasis in original)); id. (in its conclusion, stating "a multitude of fact questions remain at issue, and discovery has essentially just begun.").

court's grant of summary judgment despite fact that party "explained the need for further discovery in its response brief").  See also Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc., 788 F.3d 218, 226 (6th Cir. 2015) (statement in support of a Rule 56(d) request "must describe 'exactly how [the moving party] expects those materials would help it in opposing summary judgment'" (quoting Summers v. Leis, 368 F.3d 881, 887 (6th Cir. 2004))); Summers, 368 F.3d at 887 ("Bare allegations or vague assertions of the need for discovery are not enough.").  While Rule 56 is not applicable in arbitration proceedings, it supports the notion that Judge Washington's discounting of DPS's summary assertions regarding incomplete discovery was not fundamentally unfair.

DPS asserts now, before this Court, that it did not receive the invoices from Sodexo until after its response to Sodexo's motion was due, thereby preventing DPS from fact-checking the affidavit's totals.  Defs. Reply at 5-6.  But missing invoices was not a complaint DPS tendered to Judge Washington in its response to Sodexo's motion; in fact, in its amended answering statement DPS expressly admits that Sodexo "has sent DPS numerous invoices."  Am. Answering Statement at 9, ¶ 50.  And regardless of the number of invoices in its possession, nothing prevented DPS from submitting some kind of counter-affidavit to Judge Washington disputing or denying the total Sodexo alleged was due.  The Michigan statute governing the account stated procedure merely requires the affidavit be denied, see Mich. Comp. Laws § 600.2145; it does not specify the form or precision of the denial.  DPS did submit three different affidavits to Judge Washington with its response to Sodexo's motion, but those affidavits stated only that the affiants had reviewed pertinent portions of the response, the affiant had personal knowledge of those portions, and those portions were accurate.  See Resp. to Mot. Summ. Disp. at 33-34, 61-62, 70-71 of 85 (cm/ecf pages).  Judge Washington specifically found

those affidavits wanting.  2/9/2015 Interim Decision at 11.  Thus, it was not the procedures employed by Judge Washington that prevented DPS from mounting a defense to the specific amount alleged owed; rather, it was DPS's failure or inability to meet the necessary standards required by those procedures.[13]

Ultimately, the Court cannot conclude that Judge Washington's grant of Sodexo's account stated claim via summary disposition denied DPS a fundamentally fair hearing. Notably, Judge Washington acknowledged that summary disposition is generally not proper prior to the close of discovery, but he also cited authority that summary disposition is appropriate "if there is no reasonable chance that further discovery will result in factual support for the nonmoving party."  2/9/2015 Interim Decision at 7.  DPS does not disagree with this proposition; it just contends that this "clearly cannot be said to be true in this case."  See Defs. Reply at 6-7. But that line of reasoning is nothing more than a mere disagreement with Judge Washington's decision on the merits.  And the Court may not reconsider the merits of the award, even if that award is built upon clear errors of fact or a misinterpretation of the agreement.  Wachovia Sec.,

---

[13] Some of DPS's statements in its reply brief to this Court could be construed to argue that Sodexo and/or Judge Washington failed to properly follow the account stated procedure.  See Defs. Reply at 5 (noting Sodexo did not attach the actual invoices to its affidavit and did not produce the invoices until days before Judge Washington's decision); id. at 6 (asserting that even prima facie evidence of an account stated could still be rebutted at trial).  At the hearing on DPS's motion, counsel for DPS expressly argued that even if the Michigan procedure could properly be utilized in an arbitration context, it was improperly applied in substance in the present case.  However, the crux of DPS's motion in this Court was that Judge Washington erroneously imported the procedure to this arbitration proceeding — not that he misapplied it. DPS has not argued (either in its motion or at oral argument) that Judge Washington acted in "manifest disregard" of the law — a stringent standard requiring DPS to show, "after applying 'clearly established legal precedent, . . . no judge or group of judges could conceivably come to the same determination.'"  Ozormoor v. T-Mobile USA, Inc., 459 F. App'x 502, 505 (6th Cir. 2012) (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros, 70 F.3d 418, 421 (6th Cir. 1995)).  Moreover, the continued viability of the "manifest disregard" doctrine, as a separate ground for vacatur, is not without question.  Id.  Regardless, the lack of developed argumentation coupled with it being raised for the first time in a reply brief renders this argument waived, see McPherson, 125 F.3d at 995-996; Peake, 2007 WL 951417, at *3.

Inc. v. Gangale, 125 F. App'x 671, 677 (6th Cir. 2005).[14]   As long as "an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (quoting E. Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000)).   DPS presented Judge Washington with arguments concerning their defenses — including the delayed and clustered manner in which Sodexo submitted invoices, and that DPS believed it had "challenged" those invoices by complaining about Sodexo's performance under the contract — and Judge Washington rejected those defenses based on the dispute-period and waiver provisions contained in the parties' Payment Agreement.   Because Judge Washington's decision is based upon an interpretation of the contract, the Court must allow it to stand.   See Solvay Pharm., Inc. v. Duramed Pharm., Inc., 442 F.3d 471, 476 (6th Cir. 2006).

### C.  Issue of Attorney Fees

At oral argument before this Court, Sodexo requested, for the first time, a ruling that Judge Washington's June 29, 2015 order rescinding the prior award of attorney fees is a nullity, and asked the Court to remand the case to Judge Washington to finalize the issue of attorney fees.  DPS objected to this request, and Sodexo responded that the issue was raised in the papers provided to the Court and had also been briefed before Judge Washington.

---

[14] For this reason, even if the Court were to construe DPS's reference to undiscovered "written challenges to Sodexo's Community Use invoices" as a cognizable objection to a summary disposition procedure on the grounds of incomplete discovery, Judge Washington was within his authority to determine that additional evidence of those "challenges" would not lend further support to DPS's defenses or counterclaims.  DPS argued in its brief to Judge Washington that it did in fact challenge the Community Use invoices, because it "called into question" the invoices when it complained about the timeliness of the invoices.  Resp. to Mot. Summ. Disp. at 5. However, Judge Washington expressly disagreed with DPS that "its complaints to Sodexo about timeliness of invoice submissions constitute[d] a 'challenge' under the Payment Agreement." 2/9/2015 Interim Decision at 11 n.4.  The Court is not at liberty to displace Judge Washington's interpretation of what constitutes a "challenge" under the contract.

Sodexo's statement that this issue was properly presented to the Court is inaccurate.  In a footnote in its petition to <u>confirm</u> Judge Washington's award, Sodexo notes that the June 29, 2015 attorney-fee modification to the February 9, 2015 interim award ran afoul of AAA Rule 50 and the doctrine of <u>functus officio</u>, and states that the "Court is empowered to address Judge Washington's oversight pursuant to Section 11 of the FAA to 'modify and correct the award, so as to effect the intent thereof and promote justice between the parties.'"  Pl. Br. in Supp. of Pet. at 9 n.8.  Sodexo's response to DPS's motion contains a similar footnote, noting that the rescission was improper.  Pl. Resp. at 4 n.3.  However, Sodexo never asked the Court in its written submission to remand this case to the arbitrator for a final determination of attorney fees.[15]

In any case, no remand is warranted under the law.  Commercial Rule of Arbitration 50 permits an arbitrator to "correct any clerical, typographical, or computational errors in the award," however he or she "is not empowered to redetermine the merits of any claim already decided."  "[T]he <u>functus officio</u> doctrine . . . holds that an arbitrator's duties are generally discharged upon the rendering of a final award, when the arbitral authority is terminated."  <u>M&C Corp. v. Erwin Behr GmbH & Co., KG</u>, 326 F.3d 772, 782 (6th Cir. 2003).

While Sodexo argued at the hearing that remand following confirmation of an award is an appropriate mechanism for relief, its availability is severely limited.  In terminating the arbitrator's authority under the agreement, the doctrine of <u>functus officio</u> generally precludes remand to the arbitrator to re-examine a final decision he had previously rendered.  <u>See</u> <u>Green v. Ameritech Corp.</u>, 200 F.3d 967, 976-977 (6th Cir. 2000).  Exceptions to this general rule include:

---

[15] Aside from a boilerplate request for "any further relief this Court deems appropriate," Sodexo never made an affirmative request to reinstate the award for attorney fees, just that the Court "confirm[ ] the Award."  <u>See</u> Pet. to Confirm at 9 (designating the relief requested); Pl. Br. in Supp. of Pet. at 14 (same); <u>see also</u> Pl. Resp. at 23 (requesting the Court confirm the "Final" award).

(i) to correct a mistake apparent on the face of the award; (ii) to address an issue that was submitted to the arbitrator but not decided, because as to that issue the arbitrator did not exhaust his function and it remains open for a subsequent determination; and (iii) "where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." Id. at 977 (quoting La Vale Plaza, Inc. v. R.S. Noonan, Inc., 378 F.2d 569, 573 (3d Cir. 1967)). Thus, "[c]ourts usually remand to the original arbitrator for clarification of an ambiguous award when the award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation." M&C Corp., 326 F.3d at 783 (quoting Green, 200 F.3d at 977) (emphasis in original).

The error Sodexo identifies does not fall within any of these recognized exceptions. To correct it would seemingly require the Court to conclude that the attorney-fee modification amounted to misconduct warranting vacatur, vacate the full award on that basis, and remand the matter to a new arbitrator to commence the process anew. See Muskegon Cent. Dispatch 911 v. Tiburon, Inc., 462 F. App'x 517, 527 (6th Cir. 2012) (under doctrine of functus officio, "where a vacated arbitration award is remanded and requires a reopening of the merits of a claim, remand to a new arbitrator is appropriate"). But none of this has been requested of, nor briefed to, the Court. Sodexo seeks affirmance, not vacatur. Therefore, the Court declines Sodexo's invitation.

## III. CONCLUSION

For the reasons stated above, Defendants' motion to vacate (Dkt. 36) is denied. The arbitration award is confirmed. The parties shall submit a judgment approved as to form on or before August 17, 2016. If the parties cannot agree as to the form of the judgment, Sodexo and DPS shall each submit, by August 17, 2016, a proposed judgment and a memorandum in support of entry of that party's proposed judgment.

SO ORDERED.


                                        s/Mark A. Goldsmith
Dated: August 10, 2016                  MARK A. GOLDSMITH
       Detroit, Michigan                UNITED STATES DISTRICT JUDGE


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2016.

                                        s/Marlena Williams
                                        Acting in the absence of Karri Sandusky
                                        Case Manager